UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
BERNADETTE DASHIELL,

<table>
<tr><td>Plaintiff,</td><td>**COMPLAINT**</td></tr>
<tr><td>-against-</td><td>**JURY TRIAL REQUESTED**</td></tr>
<tr><td>THE NEW YORK TIMES COMPANY,</td><td></td></tr>
<tr><td>Defendant.</td><td>Civil Action No. 22 Civ. 1922</td></tr>
</table>

-------------------------------------------------------------------------------x

### PRELIMINARY STATEMENT

Plaintiff BERNADETTE DASHIELL ("Plaintiff"), by and through her attorneys, DeLince Law PLLC and Margaret McIntyre, Attorney at Law, as and for her Complaint, alleges as follows:

### PRELIMINARY STATEMENT

1.      This action is for injunctive and declaratory relief, back pay, liquidated damages, compensatory and punitive damages, attorneys' fees, costs, and other relief to redress pay discrimination in employment on the basis of race, gender and age, as well as "intersectional" or "race plus gender" discrimination.

2.      Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII); the Civil Rights Act of 1866, 42 U.S.C. §1981; the New York City Human Rights Law ("NYCHRL"), §§ 8-107(1)(a)(3), and 8-107(17) of the Administrative Code of the City of New York; and the New York Equal Pay Act, §§ 194 and 198 of the New York Labor Law ("NYLL").

3.      This action alleges disparate treatment discrimination as well as disparate impact discrimination in violation of the NYCHRL.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

5.      Jurisdiction to grant declaratory judgment is conferred by 28 U.S.C. §§ 2201 and 2202.

6.      This Court has supplemental jurisdiction over Plaintiff's pendant state and local law claims under 28 U.S.C. § 1367 because those claims arise out of the same common nucleus of operative facts and are part of the same case or controversy as Plaintiff's federal claims.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

8.      Plaintiff is a Black woman.

9.      From in or about 2016 until her retirement, Plaintiff's age was between 55 and 60.

10.      Plaintiff was employed by Defendant The New York Times Company (hereinafter "Defendant") first as a freelance Art Director from between in or about 1995 until in or about 2006, when she was made a full-time employee of Defendant.

11.      Plaintiff retired from her employment with Defendant on July 2, 2021.

12.      Defendant is a mass media news company that publishes the newspaper The New York Times, which is circulated in New York and worldwide. Defendant maintains its New York office at 620 Eighth Avenue, New York, New York 10018.

13.      Upon information and belief, Defendant has over 500 employees and is an employer within the meaning of 42 U.S.C. § 2000e-(b), §8-102 of the Administrative Code of New York City as well as NYLL §§2, 190(3).

ADMINISTRATIVE HISTORY

14.     On June 30, 2021, Plaintiff filed charges of employment discrimination against Defendant based on race and sex with the United States Equal Employment Opportunity Commission ("EEOC"), which was within 300 days of the last incident of discrimination based on race and sex.

15.     On December 16, 2021, the EEOC issued Plaintiff a Notice of Right to Sue in connection with her charges, which was received by Plaintiff on December 16, 2021. This complaint has been filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

FACTS

16.     Plaintiff was at all relevant times herein qualified for her role as Art Director with Defendant. She is an award winning Art Director with a Bachelor of Fine Arts in Graphic Design from Boston University. Her education included the study of art, illustration, photography, design and typography. Plaintiff received awards for her art directing work with  Defendant and in her previous role as Art Director of The Newark Star-Ledger, a role she held for approximately five years before she started to work for Defendant.

17.     On or about January 13, 1995, Plaintiff joined Defendant as a freelance Art Director in its Art and Design Department, which is part of the Newsroom. After approximately 11 years in that role, Plaintiff was made part of the full-time staff of Defendant.

18.     When Plaintiff became a full-time staff member of Defendant, she was the first African-American female to be hired into the position of Art Director in Art and Design with Defendant.

19.     Subsequently, one other African-American woman was promoted to Art Director in Art and Design with Defendant.

20.     Since in or about 2015, and up to her retirement on July 2, 2021, Plaintiff was the only Black female holding the staff position of Art Director in the Art and Design Department with Defendant.

21.     From shortly after Plaintiff joined Defendant as a freelancer until her retirement on July 2, 2021, Plaintiff was a member of the union NewsGuild-Communications Workers of America ("NewsGuild").

22.     As a member of NewsGuild, Plaintiff became a participant in the pension plan managed by NewsGuild on behalf of Defendant's employees. Contributions to Plaintiff's account with the pension plan were determined by Plaintiff's pay as a freelancer starting in 1995 and based on her base pay when she became a full-time employee.

23.     In or about 1997, Plaintiff also became a participant in a 401(k) Plan operated by Defendant on behalf of its employees, to which Defendant made contributions determined by each employee's base pay.

24.     Pursuant to the collective bargaining agreements entered into by Defendant and NewsGuild throughout Plaintiff's employment, the pay of all Art Directors was required to be at least the minimum weekly salary amount set by the collective bargaining agreements.

25.     However, some staff Art Directors belonged to a group within the collective bargaining agreements known as "Group 10C" and others belonged to "Group O."

26.     Once Plaintiff became a full-time staff employee, she was assigned to Group O under the collective bargaining agreements.

27.     Art Directors assigned to Group 10C were eligible for overtime pay or shift differential pay.

28.     Art Directors in Art and Design assigned to Group O were not eligible for overtime pay or shift differential pay, but their minimum base pay was higher than the base pay of Group 10C Art Directors.

29.     Each year of Plaintiff's employment with Defendant, Art Directors' pay was increased yearly by a set percentage of the minimum weekly salary for Art Directors in their group as defined by the collective bargaining agreement.

30.     The collective bargaining agreements in effect during Plaintiff's tenure with Defendant allowed Defendant to pay staff Art Directors more than the minimum salary and to determine its own reasons for doing so.

31.     Upon information and belief, Defendant also had discretion to determine whether Art Directors were categorized as Group 10C or Group O Art Directors.

32.     Upon information and belief, Defendant at all relevant times herein employed over 40 Art Directors company-wide, including freelance Art Directors.

33.     Upon information and belief, Defendant at all relevant times herein employed approximately 12 Art Directors with the Art and Design Department.

34.     Upon information and belief, at all relevant times herein, all Art Directors employed by Defendant were highly talented professionals.

35.     Plaintiff started as a floater when she joined the staff in 2006, working on various sections of the paper as needed. In or about 2012, Plaintiff was assigned responsibility for the Thursday Styles Section, a part of Features.

36.    Upon information and belief, at all relevant times herein, some Art Directors were responsible for one Section of the paper and some were responsible for two, and how the extra responsibility factored into compensation was determined on a wholly subjective basis by supervisors responsible for evaluating the Art Directors' work performance.

37.    Plaintiff's duties as an Art Director included designing pages for print sections and commissioning illustrations to accompany stories. Plaintiff designed on average more than 10-12 pages a week, which entailed reading hundreds of stories and selecting hundreds of photos monthly to get to the end result. Since in or about 2012, she commissioned approximately 100-200 illustrations per year for the Styles, Vows and Smarter Living reports. She designed and produced daily Fashion pages during fashion month twice a year, and created digital assets for stories and social media two to three times monthly.

38.    Plaintiff at all times in her employment with Defendant performed outstanding design work. To do so, she collaborated with team members across job titles, regularly incorporating feedback from supervisors as well as peers, and regularly participated in multiple team meetings. The collaborative nature of the work meant that each employee might belong to multiple teams, resulting in a frequently conflicting schedule of team meetings for all employees.

39.    Throughout her employment with Defendant, Plaintiff's work received compliments from the executive editor, the publisher, other editors and many colleagues.

40.    Upon information and belief, at all relevant times herein, aside from contractually required minimum salaries, Defendant permitted supervisors the full discretion to subjectively determine employee pay based on many factors, including prior experience, education, individual expertise, past performance, market dynamics or the composition of the available labor pool.

41.    Apart from her receipt of the annual increase mandated by the collective bargaining agreements in effect, Plaintiff did not receive any adjustment to her base pay in any of the years she was a full-time employee with Defendant.

42.    Art Directors other than Plaintiff periodically received "merit" increases to their base pay based on Defendant's policy of granting supervisors full discretion to apply subjective factors to assess performance. That policy resulted in a disparate impact against Black and female employees, including Black female employees.

43.    The "merit" increases to the base pay of Art Directors other than Plaintiff, based on Defendant's policy of granting supervisors full discretion to apply subjective factors to assess performance, also resulted in disparate treatment discrimination against Plaintiff on the basis of her age, gender and race as well as her intersectional status as a Black female.

44.    At all relevant times herein, merit-based pay increases increased the amount of an Art Director's base pay, and thus increase the amount an Art Director of Defendant would subsequently receive in pension payments and 401(k) plan contributions.

45.    Defendant's discriminatory denials of merit-based pay increases to Plaintiff throughout her employment caused Plaintiff to have a lower base pay at all relevant times herein than similarly situated non-Black female employees and also a lower base pay than similarly situated younger employees, and caused Plaintiff to receive lower pension and 401(k) plan contributions.

46.    In or about November or December 2017, Plaintiff agreed to take responsibility for the Sunday Styles Section, in addition to Thursday Styles. Plaintiff asked for but did not receive an increase in her base pay because of the increased responsibility of a second section.

47.     Upon information and belief, in or about 2017, Defendant undertook a study of its pay practices to determine whether there were differences in the pay rates of its unionized employees based on gender or race, and adjusted some pay rates.

48.     Plaintiff's pay rate was not adjusted in 2017 apart from the regular annual increase.

49.     In or about late 2017 or early 2018, Defendant promoted Shannon Robertson ("Robertson") to Features Design Director, giving her managerial responsibility for design employees in all sections of Features. Robertson's responsibilities included evaluating the work performance of Art Directors, including Plaintiff.

50.     From late 2017 or early 2018 until July 2, 2021, Robertson exercised control over the terms and conditions of Plaintiff's employment and determined Plaintiff's compensation.

51.     Upon information and belief, Robertson showed a preference for hiring younger employees in Features. Between the time she became Features Design Director and mid-2021, she hired approximately two full-time Art Directors and one Staff Editor (a position comparable to Art Director), and all of them were significantly younger than Plaintiff.

52.     Upon information and belief, the two Art Directors hired by Robertson who were younger than Plaintiff were paid more than Plaintiff even though they were less experienced than Plaintiff and their performance was not better than Plaintiff's work performance.

53.     In or about 2018, Defendant instituted a new system for evaluating employee work performance, and for that first year, employees were not given formal ratings.

54.     Plaintiff was not given a performance evaluation for 2018.

55.     In or about late 2018 and into March 2019, Plaintiff took a series of intermittent leaves from her job, using the vacation and compensatory time she had available and had not

8

been able to use. The reason the leave time ended up intermittent was because Plaintiff agreed to

work for brief periods within the leave when she was needed. All of Plaintiff's leave time was

approved in advance by Jackie Cabrera, Director of Operations, pursuant to Defendant's policies.

56.     On March 7, 2019, Robertson emailed Plaintiff about Plaintiff's recent use of

vacation and compensatory time, noting that she had not seen Plaintiff in the office all year. She

instructed Plaintiff to direct future requests for time off to her directly.

57.     Upon information and belief, Plaintiff was the only employee under Robertson's

supervision who had to have leave time approved by Robertson instead of by Jackie Cabrera.

58.     When Plaintiff returned from leave on or about March 25, 2019, Robertson told

Plaintiff she was being reassigned to the Art News Design Team from Styles.

59.     At that time, Robertson had hired a new freelance Art Director, who was much

younger than Plaintiff, and Robertson intended to assign her to Styles.

60.     Plaintiff objected to being moved away from her position without good cause. She

proposed that the new Art Director be assigned to Sunday Styles and that she remain Art Director

for Thursday Styles. That arrangement was agreed upon but the new Art Director only stayed in

that role for a few months, and then Plaintiff resumed responsibility for Sunday Styles.

61.     In or about July 2019, Defendant undertook a detailed department-by-department

review of staff compensation to identify, understand and address any pay discrepancies that were

not the result of the factors used to evaluate employee work performance.

62.     Plaintiff's pay was not adjusted in July 2019 because of that review.

63.     Upon information and belief, the review of pay in July 2019 did not include an

analysis of whether Defendant was biased in its assessment of employee performance based on

the subjective application of factors used to evaluate employees.

64.     Upon information and belief, the system for evaluating employee work performance underwent multiple changes between 2018 and 2021, including the addition of formal ratings starting for the year 2019. The range of ratings available were:  (1) Doesn't Meet Expectations, (2) Partially Meets Expectations, (3) Meets All Expectations, (4) Exceeds Various Expectations, (5) Frequently Exceeds Expectations, and (6) Substantially Surpasses Expectations.

65.     Plaintiff's performance evaluations for the years 2019 and 2020 both contained numerous references to Plaintiff's praise-worthy accomplishments. However, her overall performance was rated both years as simply "Meets All Expectations."

66.     Plaintiff's performance evaluations were completed in a highly subjective manner by Robertson and the quality of her work was not accurately captured by the rating of "Meets All Expectations."

67.     Robertson's criticisms of Plaintiff's work performance in 2019 and 2020 included false accusations that Plaintiff resisted feedback and did not communicate well with Robertson. These criticisms reflected Robertson's bias against Plaintiff as an older Black woman. Robertson apparently believed Plaintiff should adopt Robertson's editorial suggestions as if they were directions. Robertson did not expect younger Art Directors, or those who were not Black females, to simply adopt her editorial suggestions. In fact, it was the policy of Defendant to allow Art Directors and their Editors to exercise independent editorial judgment, in coordination with team members, but Robertson held Plaintiff to a different standard.

68.     In November 2020, the NewsGuild announced its findings of a study of employee performance evaluations of NewsGuild members that revealed hidden bias in performance

10

evaluations at Defendant. The same study found that workers of color were under-represented at high score levels and over-represented at lower score levels on the performance evaluations.

69.     The highly subjective and unfounded criticism of Plaintiff's overall performance in 2019 and 2020 resulted in Plaintiff not receiving merit pay increases for those years, and led to her having lower base pay than similarly situated non-Black female Art Directors in 2020 and 2021, and also to Plaintiff having lower base pay than similarly situated employees who were younger than Plaintiff.

70.     Upon information and belief, Plaintiff's pay had been lower than similarly situated employees who were non-Black, male or younger than Plaintiff, since at least 2006.

71.     Upon information and belief, those better paid, similarly situated employees who were non-Black, male or younger than Plaintiff were not performing their jobs in any objective way that was better than Plaintiff's work performance.

72.     Upon information and belief, a white female Art Director with years in the role of Art Director comparable to Plaintiff's years in the role was earning over $141,000 in 2021, when Plaintiff was earning just under $125,000.

73.     Upon information and belief, another white female Art Director who started with Defendant just one year before Plaintiff started as a freelance Art Director with Defendant was earning approximately $14,000 more than Plaintiff in 2021.

74.     Upon information and belief, a white male Art Director hired by Defendant in or about 2011 was earning approximately $15,000 more than Plaintiff in 2021. That same Art Director was younger than Plaintiff.

75.     Upon information and belief, a white male Art Director hired by Defendant in or about 2013 was earning approximately $11,000 more than Plaintiff in 2021.

76.     From in or about March 2020, when the Covid-19 pandemic began, up until the time of Plaintiff's retirement on July 2, 2021, all Art Directors, including Plaintiff, worked remotely from home.

77.     In or about the summer of 2020, following the police killing of George Floyd, many employees of color at Defendant, including Plaintiff, called upon the leadership of Defendant to address racial bias in every aspect of the company's operations, including the treatment of employees.

78.     At that time, Defendant publicly stated its commitment to principles of diversity, equity and inclusion.

79.     During 2020 and 2021, Plaintiff, who had long championed diversity, equity and inclusion at Defendant, introduced well over 30 new illustrators who had never before appeared in the pages of The Times.

80.     In or about early 2021, Defendant issued a report entitled "A Call To Action: Building a Culture That Works for All of Us," which found that Defendant was a difficult place to work for people of color, particularly for Black women. The report also found "elevated rates" of attrition among employees of color.

81.     Around that time, Plaintiff discussed the subject of the report with Robertson, specifically stating that she (Robertson) and Tom Bodkin, Deputy Managing Editor of Art and Design, were part of the problems noted in the report. Robertson suggested that if Plaintiff had a concern she should reach out to Anthony Perry, Defendant's Human Resources Business Partner for Art and Design.

82.     On March 10, 2021, in response to an inquiry Plaintiff made, Plaintiff was told by one of her union representatives that her salary was below the median and average salaries of full time Group O Art Directors.  Plaintiff's then salary of $124,984.08 was lower than the median

annual salary for all full time Group O Art Directors of $133,770.45. The average annual salary for all full time Group O Art Directors at the time was $132,435.25.

83.    That same day, Plaintiff emailed Robertson and Bodkin to ask them to meet with her about her pay, which she said she found troubling, "especially in light of the new DEI findings."

84.    On March 18, 2021, Robertson replied to Plaintiff, "I don't want you to take the radio silence here as a sign of inaction. We're looking into this question and will get back with you as soon as we can."

85.    On May 12, 2021, Plaintiff again emailed Robertson for a response to her inquiry about pay disparity.

86.    The same day, Robertson replied to Plaintiff by email that, "[a]fter conducting an in-depth analysis, we have determined that you are compensated fairly" and offered to meet with Plaintiff to discuss the matter further.

87.    Upon information and belief, Defendant's reasons for determining that Plaintiff was compensated fairly, despite her being paid less than similarly situated non-Black and male employees, as well as less than younger similarly situated employees, was not based on a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a bona fide factor other than Plaintiff's status within one or more protected class or classes, such as education, training, or experience. Defendants' reasons were not job-related with respect to the Art Director position and were not consistent with business necessity.

88.    Plaintiff's meeting with Robertson was postponed numerous times in May and June 2021. Although plans were made to hold the conversation even after Plaintiff retired on July 2, 2021, Defendant canceled the meeting upon learning that Plaintiff had filed her EEOC charge.

89.    Upon information and belief, Plaintiff was replaced by a non-Black woman who is younger than Plaintiff.

90.    Plaintiff was and remains deeply hurt to learn that she was deemed to deserve to be paid significantly less than similarly situated employees who were not Black females and less than similarly situated employees who were younger than Plaintiff.

91.    Because of Defendant's discriminatory actions, Plaintiff's pay from March 2016 to July 2, 2021, Plaintiff's base pay was lower than it should have been.

92.    Because of Defendant's discriminatory actions, Plaintiff's pension payments have been and will continue to be lower than they otherwise would be.

93.    Because of Defendant's discriminatory actions, the amounts contributed to Plaintiff's 401(k) Plan account was, along with subsequent earnings on those contributions, were lower than they would have been if Plaintiff had not been discriminated against.

## FIRST CAUSE OF ACTION
### (Title VII Disparate Treatment)

94.    Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

95.    Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her race and gender, in violation of 42 U.S.C. § 2000e *et seq.*

## SECOND CAUSE OF ACTION
### (Disparate Treatment in violation of 42 U.S.C. §1981)

96.    Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

97.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her race, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981

### THIRD CAUSE OF ACTION
**(Intentional Discrimination in Violation of New York City Human Rights Law
N.Y.C. Administrative Code § 8-107(1)(a)(3))**

98.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

99.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her race and gender, separately and together, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York.

### FOURTH CAUSE OF ACTION
**(Intentional Discrimination in Violation of New York City Human Rights Law
N.Y.C. Administrative Code § 8-107(1)(a)(3))**

100.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

101.     Defendant's acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her age, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York.

### FIFTH CAUSE OF ACTION
**(Disparate Impact Discrimination in Violation of
New York City Human Rights Law,
N.Y.C. Administrative Code § 8-107(17))**

102.     Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

103.    Defendant's acts, practices, and policies described herein caused disparate impact discrimination against Plaintiff on the basis of her race and gender, separately and together, in violation of the New York City Human Rights Law ("NYCHRL"),  § 8-107(17) of the Administrative Code of the City of New York.

### SIXTH CAUSE OF ACTION
**(Violation of New York State's Equal Pay Act)**

104.    Plaintiff realleges and incorporates by reference the foregoing allegations as if fully set forth herein.

105.    By the acts and practices described above, Defendant violated the New York Equal Pay Act, Sections 194 and 198 of the New York Labor Law, in that Defendant has discriminated against Plaintiff by paying non-black female, as well as younger employees, higher wages than Plaintiff for performing either equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, or substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, using factors not based on business necessity.

106.    Defendant knew that its actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

107.    Plaintiff suffered lost wages because of Defendant's willful and unlawful violation of the New York Equal Pay Act.

### DEMAND FOR JURY TRIAL

108.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Declare, adjudge and decree that Defendant subjected Plaintiff to discrimination based on race and gender, separately and together, in violation of Title VII, 42 U.S.C. § 2000e *et seq*.

2.    Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination on the basis of her race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

3.    Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination against Plaintiff on the basis of her race and gender, separately and together, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York.

4.    Declare, adjudge and decree that Defendant subjected Plaintiff to intentional discrimination against Plaintiff on the basis of age, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(1)(a)(3) of the Administrative Code of the City of New York.

5.    Declare, adjudge and decree that Defendant's policies and practices caused disparate impact discrimination against Plaintiff on the basis of her race and gender, separately and together, in violation of the New York City Human Rights Law ("NYCHRL"), § 8-107(17) of the Administrative Code of the City of New York.

6.    Declare, adjudge and decree that Defendant willfully violated the New York Equal Pay Act, New York Labor Law §§ 194 and 198.

7.    Order Defendant to pay Plaintiff damages in the amount equal to the value of all back pay, including benefits, plus interest thereon, that Plaintiff lost because of Defendant's discriminatory actions, including Defendants' discriminatory pay practices.

8.      Award Plaintiff compensatory damages.

9.      Award Plaintiff punitive damages.

10.     Award Plaintiff liquidated damages under Sections 194 and 198 of the New York

Labor Law.

11.     Award Plaintiff all costs and reasonable attorney's fees incurred in connection

with this action.

12.     Award such other and further relief as this Court may deem just and proper.

Dated:  March 7, 2022
        New York, New York

                                        Respectfully submitted,


                                        s/  J. Patrick DeLince
                                        _____

                                        J. Patrick DeLince
                                        DELINCE LAW PLLC
                                        299 Broadway, Suite 1310
                                        New York, NY 10007
                                        Tel. 212 382 3544
                                        jpd@delincelaw.com


                                        Margaret McIntyre, Attorney at Law
                                        195 Montague Street, 14th Floor
                                        Brooklyn, New York 11201
                                        (212) 227-9987
                                        mem596@icloud.com

                                        *Attorneys for Plaintiff*